UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Case No.
KIM MOORE,

                       Plaintiff,                            **COMPLAINT**

            - against -

HADESTOWN BROADWAY LIMITED             **PLAINTIFF DEMANDS**
LIABILITY COMPANY, HADESTOWN LLC,       **A TRIAL BY JURY**
AND HADESTOWN NORTH AMERICAN
TOURING LIMITED LIABILITY COMPANY,

                      Defendants.
------------------------------------------------------------------------X

      KIM MOORE ("Plaintiff" or "Moore"), by and through her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, against HADESTOWN BROADWAY LIMITED LIABILITY COMPANY, HADESTOWN LLC, AND HADESTOWN NORTH AMERICAN TOURING LIMITED LIABILITY COMPANY (collectively, the "Hadestown Defendants" or "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters, as follows:

### NATURE OF THE CASE

1. This is a civil action based upon Defendants' violations of Plaintiff's rights guaranteed to her by: (i) the race discrimination and retaliation provisions of **42 U.S.C. § 1981** (ii) the race discrimination and retaliation provisions of **Title VII of the Civil Rights Act of 1964**, as amended ("Title VII"); (iii) the race discrimination and retaliation provisions of the **New York State Human Rights Law**, New York State Executive Law, §§ 292 and 296 *et seq.* ("NYSHRL"); (iv) the race discrimination and retaliation provisions of the **New York City Human Rights Law**, New York City Administrative Code §8-107(1)(a), and (v) any other claim(s) that may be inferred from the facts set forth herein.

2. This is a case about race discrimination within the Hadestown musical, a Broadway show which has won eight (8) Tony Awards. While the show heralds itself as a beacon of diversity within Broadway's historically "all-white" standards, this proclamation was, in reality, a false front for racially discriminatory casting practices. When Plaintiff, Kimberly Moore, an African-American, black cast member and other black performers lodged a complaint regarding obvious racially discriminatory casting practices, Hadestown Company fired Plaintiff and conspicuously replaced her with a white actor.

3. As set forth below, Plaintiff seeks damages to redress the injuries she has suffered as a result of being **discriminated and retaliated against** by Defendants solely due to her **race** and for subjecting Plaintiff to a **hostile work environment**.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e) *et seq*.

5. The Court has supplemental jurisdiction over all state and city law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

7. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") upon which this Complaint is based.

8. Plaintiff received a Notice of Right to Sue from the EEOC, dated March 16, 2023 with respect to the charges of discrimination described herein. A copy of the Notice is annexed hereto as Exhibit A.

9. Plaintiff commenced this action within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

10. At all relevant times herein, Moore was a resident of the State of New York and an African American, black woman. As such, Moore is a "person" and an "employee" entitled to protection by the relevant statutes referenced herein.

11. At all relevant times herein, Defendant Hadestown Broadway Limited Liability Company was a New York limited liability company organized under the laws of the State of New York with a principal place of business located in the State of New York.

12. At all relevant times herein, Defendant Hadestown LLC was a New York limited liability company organized under the laws of the State of New York with a principal place of business located in the State of New York.

13. At all relevant times herein, Defendant Hadestown North American Touring Limited Liability Company was a New York limited liability company organized under the laws of the State of New York with a principal place of business located in the State of New York.

14. The Hadestown Defendants collectively operate, manage and produce "Hadestown" the musical (the "Hadestown Musical") which is performed "on Broadway" for residents and visitors of the State of New York at the Walter Kerr Theatre located at 219 West 48th Street, New York, New York 10036.

15. At all relevant times herein, each of the Defendants employs in excess of fifteen (15) employees and therefore each Defendant is an employer covered by the statutes referenced herein.

## MATERIAL FACTS

A. DESPITE TOUTING THEIR COMMITMENT TO DIVERSITY, THE HADESTOWN

DEFENDANTS TARGET AND DISCRIMINATE AGAINST MOORE FOR BEING AN AFRICAN AMERICAN, BLACK WOMAN.

16. On or about January 30, 2020, Defendants hired Moore as an actress for the Hadestown Musical on behalf of the Hadestown Defendants earning $115,000 annually.

17. Moore is black and an African American woman.

18. Moore routinely performed in the Hadestown Musical in New York City "on Broadway" at the Walter Kerr Theatre.

19. At all relevant times herein, Moore earned approximately one hundred and twenty thousand dollars ($125,000) per year for Defendants at the time of her termination.

20. At all relevant times during her employment with Defendants, Moore's performance met or exceeded Defendants' expectations.

21. Indeed, Founder & Executive/Creative Producer, Mara Isaacs, praised Plaintiff's performance referring to Plaintiff in emails as "such a valued member of the company" and stating "I can tell you [Plaintiff] that the entire creative team holds a great deal of affection for you and the skills you bring to the table, and you are absolutely front of mind as we look at the big picture[1]." Isaacs further stated in email to Plaintiff that she was "thrilled to get you [Plaintiff] back in the building and keep you [Plaintiff] close to the Hadestown family."

22. In or about September 2021, Moore received a raise in her base and weekly salary from Defendants from $115,000 to $125,000 annually at the time of her termination.

23. Throughout her employment with Defendants, Moore was vocal about her commitment to the effective production and performance of the Hadestown Musical in addition to her desire to advance in her career and take on additional responsibilities and roles for the

---

[1] Referring to reopening the show post-covid.

Hadestown Defendants.

24. Moore's role for the Hadestown Musical and on behalf of the Hadestown Defendants included but was not limited to performing as "Worker #1" as part of the "Workers Chorus".

25. Pursuant to the Defendants' script and casting breakdown and directives for the Hadestown Musical, "any age, all gender identities, [and] any ethnicity" could perform the roles of the "Workers".

26. Defendants routinely touted their commitment to diversity by indicating in job postings that the Defendants "prohibit discrimination" and are "committed to diversity and encourages all its employers to engage in a policy of equal employment opportunity designed to promote a positive model of inclusion." Attached as Exhibit B is a true and accurate copy of a job posting by Defendants dated November 15, 2021 reflecting same.

27. Furthermore, during the term of Moore's employment with Defendants, the director of the Hadestown Musical, Rachel Chavkin ("Chavkin"), indicated a "need to see that racial diversity and gender diversity reflected in our critical establishment", meaning, a "need" for additional racial diversity within the cast for the Hadestown Musical. Attached as Exhibit C is a true and accurate copy of an interview dated August 21, 2021 with Chavkin regarding the "need" for racial diversity in the cast of Hadestown Musical.

28. In the very same article, Chavkin admitted how the Hadestown Musical "fell short" of diversity goals for its cast despite promoting Defendants' "incredible diversity initiative".

29. Chavkin also promised, on or about August 21, 2021, to "make vast changes in the future" with respect to Defendants' hiring practices, meaning, additional diverse candidates fulfilling the roles for the Hadestown Musical.

30. However, throughout Moore's employment for Defendants, Defendants – led by Chavkin

– intentionally thwarted diversity in their cast and went even further by discriminating and retaliating against Moore on the basis of her race and subjecting Moore to a hostile work environment by routinely singling her out solely based on her status as an African American, black woman.

31. Throughout Moore's employment, Defendants' staff sought to replace Moore solely due to her race and generally complained of having "too many" African American and black cast members performing in the Hadestown Musical.

B. THE HADESTOWN DEFENDANTS DISCRIMINATE AND RETALIATE AGAINST MOORE – AN AFRICAN AMERICAN, BLACK WOMAN – SOLELY ON THE BASIS OF HER RACE AND AFTER MOORE'S COMPLAINTS TO MANAGEMENT.

32. Members of the Hadestown Defendants' management routinely complained that there were "too many" black people on stage in renditions of the Hadestown Musical in New York City.

33. David Neumann ("Neumann"), a choreographer and supervisor for Defendants, in addition to other members of Defendants' staff, expressed discontent and hostility with casting an exclusively black and African American "Workers Chorus" to which Moore was a member.

34. Specifically, on November 23, 2021, Neumann e-mailed the entire cast for the Hadestown Musical, including but not limited to, Moore, apologizing for the "white savior story", meaning, an exclusively black and African American group of actors for the Workers Chorus.

35. In response, Moore complained to Colette Luckie, Defendants' human resources employee, regarding discrimination against her and the "Workers' Chorus" in the form of hostility and anti-black sentiment by management with respect to the members of the

Workers Chorus.

36. Other black and African American members of the Workers Chorus in the Hadestown Musical also complained of racial discrimination by Defendants.

37. However, as indicated in "all company debrief" documents prepared by the Hadestown Defendants in October 2021, "black women who bring concerns are seen/labeled as problematic" by Defendants' management.

38. Consequently, Defendants' management perpetuated a policy of discriminating against and retaliating against black and African American cast members that internally complained of discrimination or diversity issues concerning the Hadestown Musical.

39. On or about November 24, 2021, *after* Moore's complaint of discrimination and a hostile work environment to human resources, Timothy Reid, a supervisor and dance captain for the Hadestown Musical, indicated to Moore that Defendants' management was seeking to replace Moore with a "white woman".

40. That day, November 24, 2021, Moore complained a second time, this time to her union representative – Walt Kiskaddon – regarding discrimination against her solely on the basis of her race.

41. Thereafter, November 27, 2021, Beverly Edwards ("Edwards"), who was a senior manager for Defendants, indicated to Moore that Defendants would be moving in a "different direction" and would be terminating her employment in the near future.

42. On November 28, 2021, Neumann sent a second e-mail – this time exclusively to the African American cast members of the Hadestown Musical – indicating that Defendants sought to avoid an "all black" cast in the Workers Chorus.

43. On or about December 1, 2021, Chavkin indicated to her staff that she had hired a white woman to replace Moore because she sought to avoid an all-black Workers Chorus.

44. Subsequently, on December 2, 2021, Defendants purposefully excluded Khalia Wilcoxon (an African American, black female) member of the cast performing in the Workers Chorus – in order to avoid an "all black" cast for the Workers Chorus.

45. That very same day, December 2, 2021, Beverly Jenkins, a stage manager and supervisor of Defendants, e-mailed the staff, including creative leads and producers for the Hadestown Musical, to complain that **"there are too many Black people on stage".**

46. On December 5, 2021, Defendants retaliated against Moore by terminating her employment with the Hadestown Defendants.

47. The reason Moore was terminated by Defendants was because she was an African American, black woman that complained internally regarding racial discrimination.

48. On December 7, 2021, Emily Afton, a white woman, replaced Moore as Worker #1 in the Workers' Chorus.

49. Even though Defendants already terminated Plaintiff, Defendants asked her to remain in the show from December 7 – 12 and December 14 – 19, 2021.

50. As a result, Defendants initiated and persisted a campaign of discriminatory conduct against Moore and other black cast members on the basis of her/their race and subjected her/them to a hostile work environment fraught with anti-black sentiment and criticism grounded solely on the basis of African American and black performers' race and color.

51. At all relevant times herein, Defendants' management was aware of the campaign of discriminatory conduct against Moore and failed to take any affirmative steps to remedy or otherwise prevent discrimination against Moore on the basis of her race and color.

52. In particular, neither Defendants' management nor its human resources department investigated or attempted to remedy the campaign of discriminatory conduct against black actors and employments working for the Hadestown Musical.

53. Defendants and its staff, particularly management, each collectively and individually, condoned, ratified, and supported the discriminatory work environment to which Moore was subjected.

54. As a result of the Defendants' actions, Moore was unlawfully treated, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55. As a result of the acts and conduct complained of herein, Moore has suffered a loss of income, the loss of a salary/pay, special damages, loss of employment, loss of employment opportunities, loss to benefits and other compensation which such employment entails, and Moore has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56. As a result of the acts and conduct complained of herein, Moore has suffered and will continue to suffer emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Moore has further experienced severe emotional and physical distress.

57. Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Moore demands Punitive Damages as against Defendants.

## FIRST CAUSE OF ACTION

## FOR DISCRIMINATION UNDER TITLE VII

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. 42 U.S.C. § 2000e-2(a)(1), states in part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

60. As described herein, Defendants discriminated against Plaintiff on the basis of her race and color, in violation of Title VII, by subjecting her to disparate treatment and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on her status as an African American female.

61. As a result of the unlawful discriminatory conduct of Defendants in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

62. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
## FOR RETALITION UNDER TITLE VII

63. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

64. 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

65. As described herein, Plaintiff engaged in protected activities, including but not limited to, making internal complaints regarding discrimination.

66. As described herein, after Plaintiff engaged in activity protected by Title VII, Defendants took adverse actions against Plaintiff by, *inter alia*, terminating her employment, which would cause a reasonable employee from making or supporting a similar complaint of discrimination.

67. As a result of Defendants' retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

68. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYSHRL

69. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

70. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

71. As described herein, Defendants discriminated against Plaintiff on the basis of her race in violation of NYSHRL, by subjecting her to disparate treatment and creating, fostering,

condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, harassment of Plaintiff based on Plaintiff's race and color.

72. As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

73. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

74. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYSHRL

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. Executive Law § 296 provides that, "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

77. As described herein, Plaintiff engaged in protected activities, including but not limited to, making internal complaints regarding discrimination.

78. As described herein, after Plaintiff engaged in activity protected by the NYSHRL,

> Defendants took adverse employment actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

79. As a result of Defendants' retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

80. Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. New York City Administrative Code §8-107(1) provides that it shall be an unlawful discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

83. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, a hostile work environment and otherwise discriminating against Plaintiff because of her race.

84. Defendants' unlawful actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYCHRL

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter…"

87. Defendants engaged in an unlawful discriminatory set of practices in violation of the NYCHRL by discriminating and retaliating against Plaintiff for her opposition to the unlawful employment practices of the Defendants.

88. Defendants' unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER § 1981

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

42 U.S.C. § 1981 states in relevant part as follows:

(a)     Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

90. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of her race (African-American).

91. Plaintiff was subjected to disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions, and loss of employment due to her race.

## EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER § 1981

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93. By the acts and practices described above, Defendants retaliated against Plaintiff for their opposition to unlawful discrimination under 42 U.S.C. §1981

94. Plaintiff was wrongfully terminated in retaliation for engaging in the above-described protected activity and for seeking equal treatment.

95. The defendant acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

96. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

## JURY DEMAND

97. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYSHRL and the NYCHRL, in that Defendants discriminated against Plaintiff

|      |      |
|------|------|
|      | because she was a black, African-American; |
| B.   | Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices; |
| C.   | Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injuries to her reputation in an amount to be proven; |
| D.   | Awarding Plaintiff punitive damages; |
| E.   | Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; |
| F.   | Awarding pre-judgment and post-judgment interest, as provided by law; and |
| G.   | Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices. |

Dated: Garden City, New York
June 8, 2023

                                                        **PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

                                                        /s/ Joshua M. Friedman
Joshua M. Friedman, Esq.
*Attorneys for Plaintiff*
585 Stewart Avenue Suite 410
Garden City, New York 11530
T: (212) 248-7431 ext. 215
F: (212) 901-2107
jfriedman@tpglaws.com