UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KIM MOORE,

                Plaintiff,                  **DECLARATION OF HEATHER P. HARRISON IN SUPPORT OF DEFENDANT'S NOTICE OF MOTION TO DISMISS**

     -against-

HADESTOWN BROADWAY LIMITED        **23-CV-04837 (LAP)**
LIABILITY COMPANY,

                Defendant.
------------------------------------------------------------------x

      HEATHER P. HARRISON declares under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

      1.    I am an attorney admitted to practice in the State of New York and before the United States District Court for the Southern District of New York.

      2.    I am an attorney in the Law Office of Vincent Toomey, attorneys for the Defendant Hadestown Broadway Limited Liability Company. As such I am familiar with the facts and pleadings relating to the instant action.

      3.    I submit this declaration in support of Defendant's motion to dismiss Plaintiff's Complaint, and all of Plaintiff's claims against the Defendant contained therein, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

      4.    On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the general rule is that a court may not consider documents that are extrinsic to the complaint. FRCP 12(d) provides that when extrinsic evidence is presented, and not excluded by the court, the 12(b)(6) motion should normally be converted to a motion for summary judgment. The rationale behind 12(d) is that a

plaintiff may lack notice of extrinsic documents at such an early stage in the litigation. *See Garvey v. Face of Beauty LLC*, 634 F.Supp.3d 84, 90 (S.D.N.Y. 2022)(*citing Cortec Industries, Inc. v. Sum Holding L.P.* ("*Cortec*"), 949 F.2d 42, 45-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).

5. "A court may, however, consider additional materials, including documents attached to the pleading, documents incorporated into the pleading by reference, public records, and documents that the party either possessed or knew about, and relied upon, in bringing the suit." *Garvey*, 634 F.Supp.3d at 90 (*citing Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) [*quoting ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)]). "In that regard, if 'a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.'" *Garvey*, 634 F.Supp.3d at 90 (*quoting Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) [*quoting Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)]).

6. Plaintiff relies on documents in the Amended Complaint, which contradict the allegations in the Amended Complaint, including her employment contracts, an October 8, 2021 email exchange between Defendant's General Manager, Beverly Edwards and Plaintiff's agent, David Secor ("Secor"), the November 23, 2021 and November 28, 2021 emails from David Neumann ("Neumann"), and her collective bargaining agreement ("CBA"). *Amended Complaint ("AC.")*, ¶¶ *13, 15, 19, 20, 38.* It is appropriate, therefore, for the Court to consider these documents as part of Defendant's FRCP 12(b)(6) motion. Moreover, because the documents relied on in the Amended Complaint contradict the allegations, the documents, not the allegations, control, and should be accepted as true.

7. In setting forth her dates of employment, role and rates of pay, Plaintiff relies on

the terms agreed upon in her two separate employment contracts with Defendant. *Amended Complaint ("AC")*, ¶¶ *13, 15, 19, 20.* Plaintiff is a signatory to these contracts. It is indisputable, therefore, that Plaintiff had notice of these documents. Since these contracts are referenced and, indeed, integral to the claims set forth in the Amended Complaint, the Court may consider these documents as part of Defendant's FRCP 12(b)(b) motion.

8. The Amended Complaint attempts to portray Plaintiff has a permanent employee who was continuously employed from January 30, 2020 through December 5, 2021. *AC* ¶¶ *13, 15, 19, 43.* However, Plaintiff's employment contracts demonstrate that Plaintiff was a temporary employee, hired for two discrete and limited terms: February 14, 2020 through August 2, 2020 and September 2, 2021 through December 5, 2021. Plaintiff also fails to note that she only worked for one month of the first term, through March 12, 2020, which is when all Broadway shows were ordered to close due to the COVID-19 pandemic.[1]

9. The employment contracts show that Plaintiff was hired as a temporary employee, not a permanent cast member. Additionally, the contracts show that Plaintiff was paid union scale rates based on a certain number of performances per week, rather than an annual salary of $115,000 or $125,000, as alleged in the Amended Complaint. *AC* ¶*13, 16.*

10. A true copy of Plaintiff's first temporary employment contract, signed by Plaintiff and Edwards on January 17, 2020, is annexed hereto and made part hereof as Exhibit "1."

11. A true copy of Plaintiff's second temporary employment contract, signed by Plaintiff and Edwards on July 19, 2021, is annexed hereto and made part hereof as Exhibit "2."

12. The Amended Complaint also contends that Plaintiff was only notified by Beverly Edwards on November 27, 2021 that the show would be moving in a different direction "and would

---

[1] https://www.nytimes.com/2020/03/12/theater/coronavirus-broadway-shutdown.html *(last visited Aug. 16, 2023).*

be terminating her employment in the near future." *Am. Compl.* ¶*38*. This allegation is demonstrably false as evidenced by the October 8, 2021 email between Edwards and Secor.[2] At 10:27 a.m., Secor wrote to Edwards: "Kim would love to know if you think there may be plans to keep her past the 5th [of December]. She would love to learn the Persephone material but if she's just going to be in the company for a little while longer she thinks someone else could focus their attention on that for the longevity of the show." At 6:50 p.m., Edwards replied "[t]here are no plans to keep Kim past December 5th at this time, as the worker tracks are full contracted and covered. I have let the team know that Kim will therefore not be an understudy for Persephone."

13. The October 8, 2021 email exchange demonstrates that Plaintiff knew well before November 27, 2021 that Defendant had no intention of asking her to stay beyond December 5, 2021, the date her temporary term of employment ended. Indeed, Secor specifically posed the question to Edwards on Plaintiff's behalf. Since this email is referenced through the allegations, and Plaintiff indisputably had knowledge of its existence, the Court may consider this document as part of Defendant's FRCP 12(b)(6) motion.

14. A true copy of the October 8, 2021 email exchange between Beverly Edwards and David Secor is annexed hereto and made part hereof as Exhibit "3."

15. The Amended Complaint also references and relies on two emails, dated November 23, 2021 and November 28, 2021, from David Neumann ("Neumann"), whom Plaintiff identifies as "a choreographer and supervisor for Defendant." *AC* ¶¶*30, 31, 39*. These emails are integral to the Amended Complaint and purport to be the basis of Plaintiff's claims of discrimination and retaliation. *AC* ¶¶*31-43*.

16. The Amended Complaint blatantly mischaracterizes and misquotes Neumann's

---

[2] This allegation is also contradicted by the second employment contract, which sets the expiration of her term of employment on December 5, 2021.

4

emails. Contrary to the allegations, Neumann's emails clearly show that he was addressing casting decisions and the impact such may have on the story. Neumann invited the cast share to their thoughts and concerns about casting. Since these emails are referenced and integral to the claims set forth in the Amended Complaint, the Court may consider these documents as part of Defendant's FRCP 12(b)(b) motion.

17.   A true copy of David Neumann's November 23, 2021 email is annexed hereto and made part hereof as Exhibit "4."

18.   A true copy of David Neumann's November 28, 2021 is annexed hereto and made part hereof as Exhibit "5."

19.   Plaintiff is a member of the Actor Equities Association ("AEA"), the exclusive bargaining representative of all actors employed by the producer members of The Broadway League ("League"), including Defendant Hadestown Broadway, LLC.

20.   A true and accurate copy of the collective bargaining agreement between AEA and the League in effect during Plaintiff's employment is annexed hereto and made part hereof as Exhibit "6."

21.   Section 4 of the CBA governs the parties' agreement regarding the arbitration and grievance procedure: "Except as otherwise expressly provided in these Rules, any dispute between a Producer and/or the League and the Actor and/or Equity relating to the interpretation or application of the Collective Bargaining Agreement between Equity and the League shall be submitted to the Grievance Committee at the request of either Equity, the Producer, or the League and, if not decided by the Grievance Committee, may be submitted to arbitration as provided below."

22.   Section 43 of the CBA further requires that all employee claims, specifically

including but not limited to claims of discrimination related to race, be pursued through the grievance and arbitration process of the CBA. In relevant part, the Section 42 of CBA states:

> The parties hereto affirm their commitment to the policy that employment hereunder shall be without discrimination on the basis of sex, race, color, creed, national origin, age, disability, sexual orientation, gender identity and/or expression or political persuasion or belief. Consistent with the foregoing and with the procedure set forth in Rule 5(E)(4), it is the intention of the parties that the casting of productions will be conducted in a manner which provides equal and fair consideration to all Actors including, but not limited to: Actors with disabilities, ethnic minorities, seniors and women.
> [...]
> (B) Claims. Any claimed violation of this policy shall promptly be submitted for settlement to the Grievance Committee, pursuant to Rule 4, ARBITRATION AND GRIEVANCE.
>> (1) The Actor or applicant shall submit to Equity any claimed violation of these provisions within 28 days of the time when the claim arose or when the Actor became aware of the alleged discrimination, whichever is later. Equity shall send written notice of the claim to the League and the Producer, in accordance with Rule 4(A)(2) within five business days thereafter. Any claim for which timely notice is not given shall be barred unless unusual circumstances can be shown for such delay. The Grievance Committee shall meet to consider the claim immediately thereafter.
>> (2) If the dispute is not decided by the Grievance Committee, the claim may then be submitted directly to arbitration in accordance with Rule 4. The Arbitrator may provide such remedies as in his discretion shall be deemed appropriate.

23. Sections 4 and 42 of the CBA both clearly unmistakably require a member to demand arbitration of all statutory claims raised in the Amended Complaint. Section 42 bars discrimination on the basis of race or color, among other grounds, and provides that such claims are subject to arbitration under the grievance and arbitration procedure of the CBA. Similarly, Section 43(E) of the CBA bars retaliation which would make such claims subject to the grievance and arbitration provisions of the CBA

24. Plaintiff alleges in the Amended Complaint that on November 24, 2021, she complained to her union representative about discrimination on the basis of race. *AC* ¶37.

25. Plaintiff, however, does not allege that she utilized the arbitration and grievance procedure set forth in the CBA, which was required.

26. In *14 Penn Plaza LLC v. Pyett*, the Supreme Court held that "a collective bargaining

agreement that clearly and unmistakably requires union members to arbitrate [age discrimination] claims is enforceable as a matter of federal law." 556 U.S. 247 (2009). As the Court explained, "nothing in the text of Title VII or the ADEA precludes contractual arbitration". Id., at 267, n. 9; *see also Johnson v. Tishman Speyer Properties, L.P.*, No. 09 CIV. 1959 (WHP), 2009 WL 3364038, at *3 (S.D.N.Y. Oct. 16, 2009) (holding that plaintiff's Title VII race discrimination claims are within the scope of the arbitration clause) (*citing 14 Penn Plaza.*)

27. Sections 4 and 43 of the CBA both clearly unmistakably require a member to seek arbitration of all statutory claims raised in the Amended Complaint. Plaintiff failed to pursue arbitration under either provision of her CBA.

28. The Amended Complaint must, therefore, also be dismissed on the grounds of failure to pursue arbitration of her claims under Sections 4 and 43 of the CBA. A true and accurate copy of the Amended Complaint is annexed hereto and made part hereof as Exhibit "7."

29. For the reasons set forth more fully in the accompanying Memorandum of Law in Support of Defendant's Motion to Dismiss, Defendant respectfully submits that all of Plaintiff's claims should be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated:     Lake Success, New York
           August 21, 2023

                                              Respectfully submitted,
                                              LAW OFFICE OF VINCENT TOOMEY

                                              _/s/ Heather P. Harrison_
                                              Vincent Toomey
                                              Heather P. Harrison
                                              *Attorneys for Defendant*
                                              3000 Marcus Avenue, Suite 1W10
                                              Lake Success, New York 11042
                                              (516) 358-5690