# EXHIBIT

# 1

Employer Agreement #:
0109029437

# Actors' Equity Association
## STANDARD MINIMUM PRODUCTION CONTRACT
### TO BE ISSUED TO ACTORS PERFORMING AS **CHORUS**
*(Must be signed by Actor and Producer before first rehearsal)*

**Agreement** made this _____ **17th** _____ day of ___ **January** ___, 2 **020**, between the undersigned Producer and **Kim Steele** _____, hereinafter "Actor".

1. The Producer engages the Actor to render services as chorus **temporary Singer/Dancer, u/s Persephone, As Cast**
   (specify: dancer/singer, singer/dancer, understudy, named part, specialty, swing, or other)

in the play now called " **Hadestown** _____ "

2. **FIRST PAID PERFORMANCE.** The date of the first paid performance shall be the **14th** day of **February**, 2 **020**, or not later than 14 days thereafter. Employment shall commence on the date of the beginning of rehearsals which date shall not be earlier than eight weeks (or ten weeks in the case of musicals) prior to the first paid performance date as set forth herein.

3. **ORGANIZATION POINT.** The point of organization of the company shall be (please select and circle one of the following):

   [X] NEW YORK CITY   [ ] CHICAGO   [ ] LOS ANGELES   [ ] SAN FRANCISCO. (If no choice is made, the organization point shall be New York City).

4. **COMPENSATION.** The Producer shall pay the Actor the sum of **See Rider** _____ dollars ($ **See Rider** ) for each week of employment during the rehearsal period and shall pay the sum of **See Rider** _____ **See Rider** _____ dollars ($ **See Rider** ) for each week of employment commencing with the first paid public performance. In addition, the Actor shall receive the sum of $ **See Rider** for out-of-town expenses in accordance with the Agreement and Rules Governing Employment under the Production Contract (hereinafter "Agreement" or "Rules"). No reduction of this compensation shall be binding on the Actor without the written consent of Actors' Equity Association (hereinafter "Equity"). All weekly compensation due shall be paid no later than the day before the last banking day of the week.

5. **RULES:** The Producer recognizes Equity as the exclusive bargaining representative of the Actor for the purpose of collective bargaining and the administration of matters within the scope of the Agreement. Both the Producer and the Actor agree that each and every provision, including the arbitration provision, contained in the Rules, is and becomes a part of this contract, as though set forth at length herein; they have read said Rules and admit actual notice and knowledge of same; each and every term of said Rules is of the essence of the contractual relationship between them; said Rules set forth the minimum conditions under which the Actor may work for the Producer; and said Rules may not be waived or modified without the written consent of Equity.

6. **SECURITY.** It is the essence of this contract and a condition precedent to the engagement of the Actor that the Producer shall file and shall at all times maintain with Equity security satisfactory to it as required by the Security Agreement and the Rules.

7. **AUTHORIZATION.** The Actor hereby assigns to Equity from any compensation to be earned in connection with this contract, such amounts for dues and initiation fees (or the monetary equivalents thereof) certified by Equity as due, and authorizes and directs the deduction of such amounts from Actor's compensation and the remission of the same to Equity. This assignment, authorization and direction covers all compensation earned as a result of employment under this contract including compensation earned pursuant to Rule 70, provided that with respect to such compensation, Equity has first required that payment thereof be made by the Producer to the Actor. This assignment, authorization and direction shall remain in effect and be irrevocable, and shall be continued automatically, unless Actor revokes it by giving written notice to the Producer and Equity by registered mail not more than 30 days and not less than 15 days prior to the expiration of each successive one year period or of each successive Agreement, whichever occurs sooner. Such revocation shall become effective the first day of the calendar month following its receipt. This clause shall be operative unless stricken by the Actor in which case the Actor is liable for direct payment of dues (or the monetary equivalent thereof) to Equity to the extent permitted by law. If the Actor elects to strike this clause and to make any legally required payments directly to Equity, and is in default of any such payments, the Actor may be subject to discharge from employment for such delinquency.

8. **SIGNATURE.** The Producer agrees that execution of this contract binds not only the producing company but also the individual signatory to this contract as well as any person under whose authority this contract is executed.

By: *Beverly Edwards*
Producer's Signature (MUST SIGN FIRST)

**Hadestown Broadway LLC, By: RCI Theatricals, Inc., GM**
Name of the Producing Organization

**New York, NY**
City and State

**53-73918**
Unemployment Insurance Registration Number

**Kim Steele**
Actor's Name (PLEASE PRINT)

*[signature]*
Actor's Signature

39 Sickles Street APT 5K
Address

New York, NY 10040
City, State, Zip Code

3978
AEA Member ID or Last 4 of SSN (One must be provided.)

COPY (Check One):   ACTOR [ ]   PRODUCER [X]   AGENT [ ]   ACTOR COPY TO EQUITY [ ]   PRODUCER COPY TO EQUITY [ ]

3/26/01

RIDER DATED JANUARY 17, 2020 TO BE ATTACHED TO AND MADE PART OF ACTORS' EQUITY ASSOCIATION ("EQUITY") STANDARD MINIMUM PRODUCTION CONTRACT FOR CHORUS DATED JANUARY 17, 2020, BETWEEN **KIM STEELE** ("ACTOR") AND **HADESTOWN BROADWAY LIMITED LIABILITY COMPANY** ("PRODUCER") PERTAINING TO ACTOR'S SERVICES IN THE BROADWAY PRODUCTION OF THE MUSICAL CURRENTLY ENTITLED **HADESTOWN** ("PLAY").

Notwithstanding anything to the contrary contained herein, it is hereby understood and agreed as follows:

1. **TERM**

   1.1   It is contemplated that rehearsals will commence on or about January 30, 2020. It is anticipated that Actor's first performance will commence on or about February 14, 2020.

   1.2   In the absence of any other termination pursuant to the rules and regulations of Equity, the Term and this Term contract shall terminate after the performance on August 2, 2020. Company closing may be effected upon one (1) week's written notice at any time during the term hereof in accordance with Equity rules.

2. **COMPENSATION**

   Actor shall receive a sum equal to the minimum Equity scale for rehearsal and performance weeks.

   Notwithstanding anything to the contrary contained herein, it is hereby understood and agreed that, commencing with Actor's first paid public performance of the Play, Actor agrees to perform the following duties as outlined, for the weekly increments indicated below:

Extraordinary Risk -                                              $ 20.00
   Turntable
   Donuts
   Trap/Elevator
   Exposure to trap opening
   Staging & choreography on tables
   Lifts
   Stage fighting

   Notwithstanding anything to the contrary contained herein, it is hereby understood and agreed that in addition to the duties enumerated in the above named contract, commencing with Actor's first paid public performance of the Play, Actor agrees to perform the following duties as outlined, for the weekly increment indicated below:

Parts -

   u/s Persephone                                            $56.00

PAGE 2 OF RIDER TO BE ATTACHED TO CONTRACT DATED JANUARY 17, 2020 BETWEEN **KIM STEELE AND HADESTOWN BROADWAY LIMITED LIABILITY COMPANY.**

### 3.  PAY WEEK NOTIFICATION/DIRECT DEPOSIT

Producer hereby notifies Actor that it will pay all Equity members their salary in the week subsequent to the week worked. Actor shall be provided the option of direct deposit of paychecks to a bank of Actor's choice, at no cost to Actor.

### 4.  ADDITIONAL PARTS

In the event that Producer requests Actor to perform any additional assignments (including but not limited to Run of the Play premium, understudying or playing a chorus specialty role, understudying a principal role, partial swing, making set moves, performing extraordinary risk or any other additional assignments of any kind or nature), Actor agrees to perform such additional assignments, provided that Actor shall be compensated therefore at the prevailing minimum scale provided for in the League/Equity Agreement.

### 5.  UNDERSTUDY

Actor acknowledges that there may be more than one actor assigned to understudy any given part and if Actor's understudy assignment is non-enumerated (e.g., 1st understudy, 2nd understudy, 1st cover, 2nd cover, etc.), Actor shall perform said understudy part(s) at the Producer's discretion.

### 6.  COSTUMES

For any and all understudy assignments which may be assigned to Actor, it is hereby mutually understood and agreed that Actor shall not have exclusive use of any costumes (with the exclusion of body part costumes, i.e. leotards, etc.) for any such understudy assignment as provided for in the League/Equity Agreement. The cleaning of such costumes shall be subject to the rules and regulations of the League/Equity Agreement.

### 7.  BIOGRAPHY

Producer agrees to include an approved biography of Actor in all theatre Playbill programs for the Play in accordance with the terms and conditions of Paragraph 7(B) of the League/Equity Agreement. It is understood and agreed that said biography shall be limited to Actor's biographical data and professional credits only. In the event Actor does not provide Producer with an approved biography, or provides a biography in excess of the maximum biography length determined by Producer in Producer's sole discretion, Producer shall have the option to prepare and/or revise a biography for Actor. Actor's failure to disapprove Producer's prepared biography or revised biography or Actor's failure to provide a biography which meets the requirements herein within two (2) days Producer's request for same by Actor shall be deemed approval of Producer's prepared/revised biography.

### 8.  ADVERTISING AND PUBLICITY

8.1.    It is hereby understood and agreed that Actor's press and promotion obligations are intrinsic to the production and this agreement and a consideration for the total compensation payable to Actor hereunder. Therefore it is hereby understood and agreed that Actor shall, commencing with the date of this contract, which Actor acknowledges may be prior to the Actor's first rehearsal hereunder at Producer's request:

(a) Perform in television and/or radio commercials to promote the Play and accept applicable union minimums for his/her services in said commercials;

(b)  Permit the use of his/her photograph in television commercials in accordance with applicable union rules, and in print advertising and the souvenir program for the Play perpetually, without additional compensation therefore, in accordance with applicable union rules, including rule 7(E) of the League/Equity Agreement; and

(c)  Permit the use of recorded footage of his/her performance for use in other forms of promotional media including, but not limited to so called "lobby loops", airline in-flight programming, in-house hotel channel programming, educational and group sales videos, and internet upon the minimum terms and compensation as required by Equity.

8.2.  At Producer's request, be available for personal appearances, including, without limitation, interviews for newspapers, magazines, and other publications, and appearances on radio and television, in connection with the promoting and publicizing of the Play.  In addition, Actor agrees that all personal publicity will be cleared in advance through the Press Representative for the Play which shall include but not be limited to any information, written, visual or otherwise on any social media website (e.g. Facebook; Twitter), internet web log (blog), or other similar forum.

8.3.  Actor must not reveal any confidential, sensitive or non-public information obtained through the course of employment and/or engagement with the production of the Play relating to any cast or crew member engaged in the Play (including their families) or concerning the business, affairs or transactions of the Producer (or their families) which have come to Actor's attention during the course of rendering services hereunder other than to Actor's professional advisors, and must refrain from revealing such information by participating in any activity on the internet that involves posting by the Actor, either directly or as the result of individual input that results in a post, for example, blogging; hosting or updating any other form of website; posting comments to any website; posting photos, other graphics, or multimedia materials; posting documents or links; posting status updates, comments or links; posting materials or links, or sharing or participating in any other way on a social networking site like Facebook; or micro-blogging, for example through Twitter. The foregoing shall not apply to information which had become generally available to the public other than as a result of a disclosure by Actor. Nothing in this paragraph shall be construed to limit Actor's rights under the National Labor Relations Act, Section 7.

8.4.  Subject to the applicable union terms hereof, Actor hereby agrees to pose for customary and usual photographs and grants to Producer the right to use Actor's name, voice, likeness, and biography in any promotions, advertising, and merchandise in all media in connection with the Play, the Producer's season, and/or Producer.

## 9.  FOOTAGE

Actor acknowledges that Producer may use footage of Actor in performances of the Play in accordance with the uses for B-Roll Footage provided under the Agreement and Rules Governing Employment Under the Production Contract.  Further, Actor agrees that Producer may utilize footage of the Actor in performances of the Play for promotional use, commercial use, and use in documentaries upon the payment of the minimum fees set forth in the applicable agreement and Rules Governing Employment Under the Production Contract.

PAGE 4 OF RIDER TO BE ATTACHED TO CONTRACT DATED JANUARY 17, 2020 BETWEEN **KIM STEELE AND HADESTOWN BROADWAY LIMITED LIABILITY COMPANY.**

Actor hereby agrees that archival filming of the Play may be created for research use at Lincoln Center Library for the Performing Arts. Such filming for this purpose is hereby agreed to by Actor.

## 10. HAIR AND PHYSICAL CONDITION

Actor shall maintain the color and style of Actor's hair, and facial hair (if applicable), as seen at the time of Actor's hiring throughout the run of the Play. However, if required by Producer to change such style, including but not limited to cutting, growing longer, coloring, and shaving, any change shall be done at Producer's expense and by Producer's hairdresser. Upon the completion of performances, Producer shall provide restoration of color and style to the extent possible, considering the length of hair at that time.

The Actor represents and agrees that Actor's physical condition has not and may not be altered from the time of Actor's hiring for the Play in a manner that would adversely affect Actor's ability to perform the requirements of the role as contracted. Further, Actor agrees to avoid excessive exposure to the sun, "sun lamps" or similar tanning equipment, which could result in the significant changes in Actor's normal skin color and agrees not to apply either a permanent or temporary tattoo without the approval of the costume designer and the express written approval of the Producer.

During performances of the Play, Actor agrees not to wear any jewelry or other body decoration including, but not limited to, bracelets, anklets, earrings, wedding or engagement rings, or other body rings that are not specifically called for and approved by the Costume Designer. Further, Actor agrees not to apply either a permanent or temporary tattoo without the express written approval of the Costume Designer and Producer.

## 11. EXCLUSIVITY OF SERVICES

11.1   Actor represents and warrants that Actor has not heretofore entered into any contract or undertaken any commitment in conflict with Actor's services for the Play, and will not do so during the term hereof. Actor acknowledges that his/her primary professional obligation during the term hereof is to render his/her services in the Play as required to the best of Actor's ability. Nothing contained herein shall be deemed to prohibit Actor from engaging in outside employment that will not be in conflict with Actor's obligation herein.

11.2   During the term hereof, Actor shall not render any services in connection with or perform in any way any material or musical compositions written for or contained in the Play, on his/her own behalf or on behalf of anyone other than Producer, or for any purpose whatsoever other than as part of the performance of Actor's role in the Play, hereunder, and for publicity and promotion thereof, without the written consent of Producer.

## 12. INTERPOLATIONS & STAGE BUSINESS

12.1   Actor agrees to perform only the material contained in the Play's script and as directed by Director or his/her designee, and shall not improvise or interpolate any material or idea in connection with Actor's performance in the Play, whether created by Actor or any other person.

PAGE 5 OF RIDER TO BE ATTACHED TO CONTRACT DATED JANUARY 17, 2020 BETWEEN **KIM STEELE** AND **HADESTOWN BROADWAY LIMITED LIABILITY COMPANY.**

12.2    Any material whatsoever, including any form of "stage business" performed by Actor in rehearsals or in any performance of the Play shall, insofar as Actor is concerned, be the property of the Play's Author or Producer, or both, as their respective interests may appear.

## 13. PROPERTY

Actor agrees that Producer is not responsible for the security of Actor's personal property or effects not used in connection with the Play, including but not limited to, computer, television set, compact disc/tape/mp3 player, radio, camera, and video player/dvd player/games.   Furthermore, if Producer provides facilities for the safekeeping of Actor's personal jewelry and cash (such as would reasonably be worn or carried to the theatre) while Actor is in rehearsal or performance at the theater, and such jewelry and/or cash is not deposited with the Producer for safekeeping, Producer shall not be responsible for the security of same.

## 14. SMOKE AND FOG

Actor acknowledges that smoke and fog special effects may be incorporated into performances of the Play. Producer agrees that such use will conform to Equity rules and Regulations.

## 15. NO WAIVER

No waiver by Producer hereto of any failure by Actor to keep or perform any covenant or condition of this agreement shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other covenant or condition.

## 16. NO PETS

Actor agrees not to bring pets or animals of any kind inside the theatre or rehearsal studios.

## 17. SMOKING

Actor acknowledges that there may be smoking on stage during the action of the Play. The foregoing notwithstanding, Actors agrees to abide by all local, state, and federal laws and/or regulations regulating smoking in the auditorium, dressing rooms, and backstage.

## 18. RECORDINGS

In the event Actor is requested by Producer to participate in audio recordings to be used in the production which are either ensemble in nature or individual in nature, Actor agrees to same in accordance with the League/Equity Agreement.

## 19. AGENCY

Subject to Equity's approval, Actor hereby authorizes the Producer to deduct, and the Producer agrees to deduct an amount equal to five percent (5%) during rehearsals and ten percent (10%) commencing with the first paid public performance from all gross performance compensation payable to Actor including but not limited to overtime, vacation pay and sick pay, and remit same on a weekly basis as commission to:

Daniel Hoff Agency, Inc.
Jeremy Sickles
5455 Wilshire Blvd. Suite 1100
Los Angeles, CA 90036

PAGE 6 OF RIDER TO BE ATTACHED TO CONTRACT DATED JANUARY 17, 2020 BETWEEN **KIM STEELE** AND **HADESTOWN BROADWAY LIMITED LIABILITY COMPANY.**

## 20. MISCELLANEOUS

20.1    Actor shall rehearse and/or perform on all holidays on which rehearsals and/or performances are scheduled.

20.2    Paragraph headings are inserted in this Agreement for convenience only and shall not be used in interpreting this agreement.

20.3    This contract and rider(s) attached thereto constitute the sole, complete, and binding agreement between the parties hereto.  It may not be changed, modified or altered in any way except by an instrument in writing, signed by all of the parties hereto.


AGREED TO AND ACCEPTED:            AGREED TO AND ACCEPTED:
ACTOR                              PRODUCER
                                   HADESTOWN BROADWAY LLC
                                   By: RCI Theatricals Inc., General Manager

By:_____         By:_____
    Kim Steele                         Beverly Edwards, General Manager