**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
KIM MOORE,

                              Plaintiff,

                -against-                                 Case No.: 23-cv-4837


HADESTOWN BROADWAY LIMITED LIABILITY
COMPANY,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS


Dated: Garden City, New York
       September 5, 2023


**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**
Joshua Friedman, Esq.
Joseph Myers, Esq.
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 410
Garden City, New York 11530
(212) 248-7431

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 1

STANDARD OF REVIEW .................................................................................................... 3

ARGUMENT ........................................................................................................................ 3

  I.    THE COURT SHOULD NOT CONSIDER DEFENDANT'S EXTRINSIC SUBMISSIONS ...... 3

  II.   DEFENDANT'S CONSTITUTIONAL AFFIRMATIVE DEFENSE DOES NOT PROVIDE A BASIS TO GRANT ITS MOTION ................................................................................. 5

  III.    PLAINTIFF AMPLY PLEADS RACE DISCRIMINATION ......................................... 8

  IV.    PLAINTIFF ADEQUATELY PLEADS RETALIATION .............................................. 9

    A.  Protected Activity ..................................................................................... 10

    B.  Adverse Action .......................................................................................... 11

    C.  Causation ................................................................................................... 12

  V.   THE COLLECTIVE BARGAINING AGREEMENT DOES NOT MANDATE ARBITRATION OF PLAINTIFF'S CLAIMS ...................................................................................... 12

  VI.   ALTERNATIVELY, THE COURT SHOULD PERMIT PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT .......................................................................................... 14

    A.  Proposed Additional Allegations ................................................................ 14

      i.   Relating to the End of Plaintiff's Employment ..................................... 14

      ii.  Relating to Defendant's Constitutional Affirmative Defense ................. 15

    B.  Legal Argument ........................................................................................ 16

CONCLUSION ................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acito v. IMCERA Grp.*, 47 F.3d 47 (2d Cir. 1995) ....................................................... 16

*Boston v. Taconic Mgmt.*, No. 12-cv-4077, 2014 U.S. Dist. LEXIS 117517 (S.D.N.Y. Aug. 22, 2014)......................................................................................................................... 16

*Cayuga Indian Nation v. Seneca Cnty.*, 260 F. Supp. 3d 290 (W.D.N.Y. 2017).......................... 5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ...................................................... 4

*Claybrooks v. ABC, Inc.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012)................................................ 6

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022) ...................................................... 5

*DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010)..................................................... 4

*Dominguez v. FS1 Los Angeles, LLC*, No. 15-cv-9683, 2016 U.S. Dist. LEXIS 65657 (C.D. Cal. May 17, 2016) ...................................................................................................... 7, 8

*Forgione v. City of New York*, No. 11-cv-5248, 2012 U.S. Dist. LEXIS 130960 (E.D.N.Y. Sept. 13, 2012)................................................................................................................... 10, 11

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) .................... 4

*Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) ........................................................... 4

*Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8 (2d Cir. 2013) (Summary Order) ............. 9

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ............................................... 12

*Hurley v. Irish-American Gay*, 515 U.S. 557 (1995)........................................................ 6

*Irish-American Gay v. City of Boston*, No. 92-1518, 1993 Mass. Super. LEXIS 320 (Mass. Super. Ct. Suffolk Cnty. Dec. 15, 1993) .............................................................. 6

*Koppel v. 4987 Corp.*, 167 F.3d 125 (2d Cir. 1999)........................................................ 3

*Kwan v. Andalex Grp., LLC*, 737 F.3d 834 (2d Cir. 2013)......................................................... 10

*Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81 (2d Cir. 2016)................................................ 13

*LeGrande v. DeCrescente Distrib. Co.*, 370 F. App'x 206 (2d Cir. 2010) (Summary Order) ..... 10

*Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) ........................................................... 12

*Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99 (2d Cir. 1999)...................................... 3

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)........................................................ 9

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001)...................................................... 16

*Orellana v. Reiss Wholesale Hardware Co.*, No. 14-cv-1913, 2016 U.S. Dist. LEXIS 76073 (E.D.N.Y. June 8, 2016)............................................................................................... 11

ii

*Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) ............................................ 4

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ............................ 5

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) .............................................................. 3

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) ........................................................................ 5

*Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir. 1988) .............. 6

*Rogers v. New York Univ.*, 220 F.3d 73 (2d Cir. 2000) *abrogated in part on other grounds 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ................................................ 13, 14

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) .......................................................... 7

*Rowell v. Sony Pictures Tv, Inc.*, No. 15-cv-2442, 2016 U.S. Dist. LEXIS 195025 (C.D. Cal. June 24, 2016) ............................................................................................ 11

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ...... 5

*Schulz v. Medtronic, Inc.*, No. 21-cv-414, 2022 U.S. Dist. LEXIS 29393 (D. Conn. Feb. 18, 2022) .................................................................................................................... 16

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004) .................................................................. 4

*Summit v. Equinox Holdings, Inc.*, No. 20-cv-4905, 2022 U.S. Dist. LEXIS 129890 (S.D.N.Y. July 21, 2022) ................................................................................................ 9

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d Cir. 2021) ........................ 4

*Van Brunt-Piehler v. Absolute Software, Inc.*, 504 F. Supp. 3d 175 (W.D.N.Y. 2020) ............. 9

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ................. 8, 9, 12

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995) ............................. 3

*Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70 (1998) ......................................... 13

## PRELIMINARY STATEMENT

Plaintiff, Kim Moore, ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Hadestown Broadway Limited Liability Company's ("Defendant") motion to dismiss Plaintiff's race discrimination and retaliation claims under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[1]

Defendant ignores Plaintiff's allegations and submits its own documents to paint a picture that contradicts the facts set forth in the Amended Complaint.  Properly considered, the Amended Complaint alleges a straightforward case of employment discrimination, with both direct and inferential evidence, as well as retaliation, with Plaintiff's termination following close in time after her complaint.  Defendant's attempt to avoid its racist actions through resort to the Constitution is unavailing as its affirmative defense is not readily evident on the face of the Amended Complaint and, in fact, the allegations of the Amended Complaint demonstrate that Defendant's decision to terminate Plaintiff because of her race was divorced from its creative decisions about casting.  Defendant's motion to compel arbitration fails in like manner.  The collective bargaining agreement, upon which Defendant relies, does not affect Plaintiff's right to proceed in court, nor mandate arbitration even if it did.  Ultimately, for those reasons, discussed in detail below, the Court should deny Defendant's motion.

## STATEMENT OF FACTS

On or about January 30, 2020, Defendant hired Plaintiff, a Black woman, as an actress for its "Hadestown" musical on Broadway.  (Am. Compl. ¶¶ 13-15).  Plaintiff's role for the "Hadestown" musical included, but was not limited to, performing as a "Worker" in the "Workers

---

[1] With one exception (*see* note 8 *infra*), Plaintiff's state and city law claims are not meaningfully distinct from her federal law claims for the purposes of this motion.

Chorus." (Am. Compl. ¶ 21). According to Defendant's script, casting breakdown and casting directives, persons of "any ethnicity" could portray "Workers." (Am. Compl. ¶ 22). Moreover, Defendant touted its commitment to diversity, noting that it "welcome[d] performers of all ethnicities." (Am. Compl. ¶ 23, Ex. B). Indeed, Rachel Chavkin ("Chavkin"), the director of "Hadestown," publicly stated "a need to see that racial diversity . . . [is] reflected in our critical establishment," referring to "Hadestown." (Am. Compl. ¶ 24).

In late November 2021, members of Defendant's staff expressed discontent with the use of an exclusively Black "Workers Chorus." (Am. Compl. ¶ 30). On November 23, 2021, David Neumann, a choreographer and supervisor for Defendant, emailed the cast of "Hadestown," apologizing for the portrayal of a "white savior story," brought about through the use of an exclusively Black "Workers Chorus." (Am. Compl. ¶ 31). Thereafter, Plaintiff complained to Colette Luckie, Defendant's human resources employee, regarding discrimination against her and the "Workers Chorus" in the form of hostility and anti-Black sentiment by management. (Am. Compl. ¶ 32).

On November 24, 2021, following Plaintiff's complaint, Timothy Reid, dance captain and a supervisor for Defendant, told Plaintiff that Defendant was seeking to replace her with a "white woman." (Am. Compl. ¶ 36). Later that same day, November 24, 2021, Moore complained to her union representative about discrimination against her on account of her race. (Am. Compl. ¶ 37). Three (3) days later, on November 27, 2021, Beverly Edwards, a senior manager for Defendant, advised Plaintiff that Defendant would be moving in a different direction and terminating her employment in the near future. (Am. Compl. ¶ 38). Less than a week thereafter, on or about December 1, 2021, Chavkin informed her staff she had hired a white woman to replace Plaintiff. (Am. Compl. ¶ 40). On December 5, 2021, Defendant terminated Plaintiff and, on December 7,

2021, Emily Afton, a white woman, took over Plaintiff's position with Defendant. (Am. Compl. ¶¶ 43-44).

## STANDARD OF REVIEW

"In order to withstand a motion to dismiss, a complaint must plead enough facts to state a claim that is plausible on its face." *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). A court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted). The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims[.]" *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

## ARGUMENT

## I.    THE COURT SHOULD NOT CONSIDER DEFENDANT'S EXTRINSIC SUBMISSIONS

In support of its motion, Defendant submits various documents, namely the "first employment contract," (Ex. 1), "the second employment contract," (Ex. 2), an October 8, 2021 email, (Ex. 3), a November 23, 2021 email, (Ex. 4) and a November 28, 2021 email, (Ex. 5), which Defendant claims are "integral" to the Amended Complaint.[2] While "integral" documents avoid the general limitation, on a motion to dismiss for failure to state a claim, to "facts alleged in the

---

[2] Plaintiff understands Defendant's inclusion of the collective bargaining agreement (Ex. 6) to address solely the portion of Defendant's motion that seeks to compel arbitration. While permissible for that purpose, consideration of this document outside that context is inappropriate for the same reasons discussed with reference to Exhibits 1-5.

complaint, documents attached to the complaint as exhibits, and documents incorporated by reference," *DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), a document is "integral" only where a "complaint relies heavily on its terms and effects." *Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (internal quotations omitted). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls[.]" *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Here, the Amended Complaint does not reference or even allude to Defendant's Exhibits 1-3 and they certainly do not form the basis of any of Plaintiff's allegations or claims. Accordingly, these documents are not "integral" to the Amended Complaint. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 108 (2d Cir. 2021). Although the Amended Complaint does reference the emails submitted as Defendant's Exhibits 4-5, that is insufficient to render those documents "integral." "Merely mentioning a document in the complaint will not satisfy [the] standard; indeed, even offering limited quotations from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotations omitted); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Therefore, Defendant's Exhibits 1-5 are not properly considered on this motion.[3]

---

[3] Defendant's contentions that Plaintiff had notice of these documents and that they thwart Plaintiff's claims do not alter the analysis. "[M]ere notice or possession is not enough" to make a document "integral." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Likewise, the fact that a document may "undermine[] the strength of [a plaintiff's] claims does not render it integral to the [c]omplaint." *Foreman*, 19 F.4th at 108 (cleaned up). If the court were to consider Defendant's exhibits, the proper course is to convert Defendant's motion to "one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by [Federal Rule of Civil Procedure] 56." *Chambers*, 282 F.3d at 154.

## II.     DEFENDANT'S CONSTITUTIONAL AFFIRMATIVE DEFENSE DOES NOT PROVIDE A BASIS TO GRANT ITS MOTION

Defendant primarily contends that its decision to terminate Plaintiff on account of her race is a constitutionally protected form of expression.  Yet, Defendant cites no authority addressing First Amendment considerations within the employment context.  This is significant as it is well established that employment discrimination laws regulate conduct, *i.e.*, the employment relationship, and not speech.  *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) ("Congress, for example, can prohibit employers from discriminating on the basis of race.  The fact this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct.").  Indeed, even speech itself can be proscribed as an unlawful employment practice because it is incidental to Congress' regulation of employment conduct.  *See R.A.V. v. St. Paul*, 505 U.S. 377, 389-90 (1992) ("Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy.").

Nonetheless, it is entirely unnecessary to reach the constitutional question as Defendant's affirmative defense is not so evident on the face of the Amended Complaint to resolve it at the pleading stage.  "A Rule 12(b)(6) motion to dismiss based on an affirmative defense cannot be granted unless it is clear from the face of the pleading that the claim is barred as a matter of law." *Cayuga Indian Nation v. Seneca Cnty.*, 260 F. Supp. 3d 290, 302 (W.D.N.Y. 2017); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  Indeed, in a slightly different context, the Second Circuit has noted has noted that First Amendment issues should rarely, if ever, be resolved on a pre-answer motion.   *See Cornelio v. Connecticut*, 32 F.4th 160, 172 (2d Cir. 2022).  Aside from *Claybrooks*, discussed *infra*, the other cases cited by Defendant highlight the

need for a developed record.  Both *Hurley v. Irish-American Gay*, 515 U.S. 557 (1995) and *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888 (1st Cir. 1988) were decided after trial.  *See Irish-American Gay v. City of Boston*, No. 92-1518, 1993 Mass. Super. LEXIS 320, at *2 (Mass. Super. Ct. Suffolk Cnty. Dec. 15, 1993) (*Hurley* decision based on record developed at four day bench trial); *Redgrave*, 855 F.2d at 891 (*Redgrave* decision based on record of sixteen day jury trial).[4]

While the sole other authority upon which Defendant relies, *Claybrooks v. ABC, Inc.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012) was decided on a motion to dismiss, the facts of that action are meaningfully distinct from this action.  Therein, the plaintiffs alleged that they were not selected to appear on the defendants' television shows because "as a matter of internal policy, the defendants intentionally cast only white Bachelors and Bachelorettes."  *Id.* at 989-91.  The plaintiffs further claimed that defendants made "the calculation that minorities in lead roles and interracial dating [was] unappealing to the shows' audiences."  *Id.* at 989.  As a result, according to the complaint, the defendants' refusal to cast minorities was "a conscious attempt to minimize the risk of alienating their majority-white viewership and the advertisers targeting their viewership."  *Id.*  Accepting these allegations as true, the court concluded that, because defendants explicitly chose only white people to appear as a creative choice, the plaintiffs sought "to alter the messaging" of defendants' shows.  *Id.* at 999.  It was, therefore, abundantly clear, solely from the allegations of the complaint, that the plaintiffs' claims ran afoul of the defendants' freedom of expression.  *Id.*

---

[4] It should also be noted that, in citing *Redgrave*, Defendant omits the final two sentences of the First Circuit's footnote, which read "[o]f course, we here simply point out some of the difficulties that arise when two important protected interests conflict -- where there is a clash of rights.  We express no view as to how, in particular cases, that clash might be resolved."  855 F.2d at 904 n. 17.

In this action, Plaintiff does not seek to alter the messaging of "Hadestown" through her continued employment.  Nor does the Amended Complaint clearly support the conclusion, as in *Claybrooks*, that the challenged action, Defendant's decision to terminate Plaintiff because of her race, was an exercise of Defendant's creative expression.  Rather, the Amended Complaint expressly states that every creative outlet, Defendant's script, its casting breakdown and its casting directives, indicated "any ethnicity" could perform the role of "Worker."  (Am. Compl. ¶ 22). Moreover, the Amended Complaint further relays that Defendant's job posting and the "Hadestown" director both expressed a commitment to diversity in casting for "Hadestown." (Am. Compl. ¶¶ 23-24).  Thus, far from demonstrating the connection between Plaintiff's termination and Defendant's free expression, which Defendant's argument requires, the Amended Complaint, in actuality, demonstrates that Defendant's creative vision for "Hadestown" was racial diversity.

Accordingly, the better corollary is the court's decision in *Dominguez v. FS1 Los Angeles, LLC*, No. 15-cv-9683, 2016 U.S. Dist. LEXIS 65657 (C.D. Cal. May 17, 2016).  Therein, the plaintiff, a television reporter, asserted that her employer refused to give her on-air assignments because of her age and gender, claiming that management was concerned with how she "looked" on camera.  (Myers Decl. Ex. B ¶¶ 15, 24).[5]  The defendant argued, much the same as Defendant here, that the First Amendment precluded the plaintiff's action.  However, the court disagreed, finding it "improper" to provide the defendant with "a blanket exemption" where the plaintiff, like here, "does not allege that she seeks to espouse a particular message using her employment [the defendant] as a vehicle, seeks to alter [the defendant's] chosen message, or seeks to otherwise dictate the content of [the defendant's] programming."  *Id.* at *5.  Absent these allegations, the

---

[5] As the *Dominguez* opinion does not contain a fact section, Plaintiff has included herewith a copy of the complaint in that action, of which the Court can take judicial notice.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

court concluded, "[a]t this stage in the proceedings, [d]efendant cannot demonstrate that there is a relationship between its ability to choose its reporter on the basis of sex, gender, or any other characteristics prohibited by Title VII, and its ability to control the content and character of its shows." *Id* at *6. As, for the reasons set forth above, Defendant likewise cannot, based on the allegations in the Amended Complaint, establish a relationship between its termination of Plaintiff and its creative choices, the Court should decline to dismiss Plaintiff's discrimination claims on the basis of Defendant's affirmative defense.[6]

## III.   PLAINTIFF AMPLY PLEADS RACE DISCRIMINATION

Contrary to Defendant's position, Plaintiff is not required to demonstrate a *prima facie* case at the pleading stage. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Rather, Plaintiff's burden is simply to show that (1) Defendant took an adverse action against her and (2) her race was the cause of the adverse action. *See id.* at 87. Defendant only challenges the causation element.[7]

Defendant's argument, such that it is, relies entirely on documents outside the Amended Complaint, which, for the reasons discussed above, are not properly before the Court on this motion. Viewed in the correct light, the Amended Complaint clearly alleges direct evidence of discrimination. Specifically, in Paragraph 36 of the Amended Complaint, Plaintiff asserts that Timothy Reid, a supervisor for Defendant, informed her that Defendant was seeking to replace her with a "white woman." Moreover, in Paragraph 40 of the Amended Complaint, Plaintiff alleges that Chavkin, Defendant's director, stated she hired a white woman to replace Plaintiff expressly

---

[6] Defendant's affirmative defense has no impact on Plaintiff's retaliation claims. (*See infra* Section IV.A).

[7] Defendant argues that Plaintiff did not suffer an adverse action in relation to her retaliation claim. As this contention is absent from Defendant's discussion of Plaintiff's discrimination claim, Plaintiff addresses it solely in the section devoted to her relation claim.

because of Plaintiff's race.  Either one of these allegations is decidedly enough to plead

discrimination.  *See e.g. Van Brunt-Piehler v. Absolute Software, Inc.*, 504 F. Supp. 3d 175, 184,

199 (W.D.N.Y. 2020) (finding direct evidence of age and gender discrimination, on summary

judgment, where manager stated that company wanted to get rid of employees "at the end of their

rainbow" and "hire guys that are athletes, that will talk trash in each other's face").

Regardless, assuming for the sake of argument that this is somehow insufficient evidence

of discrimination, Plaintiff further alleges that Defendant ultimately hired a white woman for her

position two (2) days after her termination.  (Am. Compl. ¶ 45).  This fact alone, that Plaintiff was

replaced by someone outside her protected class, is sufficient to carry her minimal burden at the

pleading stage.  *See Littlejohn v. City of New York*, 795 F.3d 297, 312-13 (2d Cir. 2015).  Thus,

there is no basis to dismiss Plaintiff's discrimination claims.

## IV.    PLAINTIFF ADEQUATELY PLEADS RETALIATION

"To survive a motion to dismiss, a complaint alleging workplace . . . retaliation need not

allege specific facts establishing a prima facie case[.]"  *Gonzalez v. Carestream Health, Inc.*, 520

F. App'x 8, 9 (2d Cir. 2013) (Summary Order).  Rather, Plaintiff merely needs to plausibly allege

that Defendant took adverse action against her because she engaged in a protected activity.[8]  *See*

*Vega*, 801 F.3d at 90.

---

[8] Unlike Title VII, under the NYSHRL and the NYCHRL, Plaintiff is merely required to show that
retaliation was a motivating factor for her termination.  *See Summit v. Equinox Holdings, Inc.*, No.
20-cv-4905, 2022 U.S. Dist. LEXIS 129890, at *48-*49 (S.D.N.Y. July 21, 2022) (noting that the
2019 amendments to the NYSHRL rendered it analogous to the NYCHRL and finding "motivating
factor" causation now applied to NYSHRL claims in instances where "but for" causation
previously applied).  As Plaintiff's retaliation claims satisfy the higher federal standards, they
certainly survive under the state law standards.

A.      **Protected Activity**

Defendant argues that Plaintiff did not engage in a protected activity because Defendant could not have reasonably believed that Plaintiff was complaining about an unlawful employment practice.  This is, of course, not the standard.  The question of whether someone's conduct forms a protected activity is judged not from the belief of the employer, but from the belief of the employee.  *See LeGrande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010) (Summary Order) ("[A plaintiff] may prevail on a claim for retaliation if he possessed a good faith, reasonable belief that he was complaining about unlawful actions to his employer.").  Indeed, the underlying complaint of discrimination need not even have merit so long as "it was motivated by a good faith reasonable belief that the underlying employment practice was unlawful."  *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

Plaintiff alleges that she complained to Defendant's human resources employee about "discrimination and hostile work environment," specifically "regarding discrimination against her and the 'Workers' Chorus' in the form of hostility and anti-black sentiment by management with respect to the members of the Workers Chorus."  (Am. Compl. ¶¶ 32, 36).  Accordingly, Plaintiff complained not only about discrimination but also about the specific form of discrimination, race, that was at issue.[9]  Moreover, the Amended Complaint further describes the anti-Black sentiment, by noting that Defendant's management routinely complained that there were "too many" Black people on stage, (Am. Compl. ¶ 29), and indicated that "'black women who bring concerns are seen/labeled as problematic' by Defendant's management."  (Am. Compl. 34).  Therefore, at a minimum, Plaintiff possessed a good faith basis for her complaint.  *See Orellana v. Reiss*

---

[9] Defendant separately claims that Plaintiff does not provide explicit details regarding the complaint.  However, this is unnecessary at the pleading stage.  *See Forgione v. City of New York*, No. 11-cv-5248, 2012 U.S. Dist. LEXIS 130960, at *30 (E.D.N.Y. Sept. 13, 2012) (finding that plaintiff need not provide the precise language used in making a complaint on a motion to dismiss).

*Wholesale Hardware Co.*, No. 14-cv-1913, 2016 U.S. Dist. LEXIS 76073, at *29 (E.D.N.Y. June 8, 2016) (finding, on summary judgment, complaint over a single comment sufficient to create a good faith basis); *Forgione v. City of New York*, No. 11-cv-5248, 2012 U.S. Dist. LEXIS 130960, at *30 (E.D.N.Y. Sept. 13, 2012) (finding allegation that plaintiff complained about "harassment and the creation of a hostile work environment" to plausibly allege protected activity).

Defendant makes a final attempt to salvage its argument by positing that allowing Plaintiff's retaliation claim to proceed will create an end run around its constitutional defense. The issue with this argument is that it does not account for basic principles of causation. Assuming Defendant is correct that the decision to terminate Plaintiff because of her race is protected by the Constitution, that would not immunize Defendant from terminating Plaintiff for any reason whatsoever. Rather, it would form Defendant's legitimate, non-retaliatory, reason for her termination, and Plaintiff could still prove that retaliatory animus was the true reason for Defendant's decision not its, presumably, protected creative choice about race. *See Rowell v. Sony Pictures Tv, Inc.*, No. 15-cv-2442, 2016 U.S. Dist. LEXIS 195025, at *28 (C.D. Cal. June 24, 2016) (finding that retaliation claims based on complaints about discrimination in casting do not present any First Amendment concerns). Thus, Defendant's final argument on protected activity fails.

### B. Adverse Action

In arguing that Plaintiff did not suffer an adverse action, Defendant once more resorts to extrinsic documents. While this is, again, improper, Defendant's argument is a red herring. As the Second Circuit has explained,

> where an employee seeks renewal of an employment contract, non-renewal of an employment contract constitutes an adverse action for purposes of Title VII[.] Although the parties focused on terminology used with respect to the plaintiff, whether plaintiff was "laid off" or "terminated" or her employment was "not renewed" is not critical to the legal analysis; rather, she suffered an adverse

employment action because she was denied the requested continued employment, regardless of the label.

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009).   Therefore, even accepting Defendant's factual contentions, its argument is immaterial.

### C. Causation

As with virtually ever other part of its motion, Defendant relies on its documentary submissions to posit that Plaintiff cannot establish a causal connection between her complaint and her termination.   Bereft of this impermissible submission, Defendant offers nothing to contradict the simple timing presented by the Amended Complaint.   *See Vega*, 801 F.3d at 90 (noting that causation is plead solely by showing that the protected activity was "followed closely in time by [the] adverse employment action").   Plaintiff complained on November 23, 2021 and was terminated less than two weeks later on December 5, 2021.   (Am. Compl. ¶¶ 32, 43).   This is well within the temporal distance necessary to establish causation.   *See id.* at 92 (finding requisite causation where two to three months elapsed between various protected activities and retaliatory acts); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 111 (2d Cir. 2010) (finding that two months between complaint and adverse action showed causal link).[10]   Accordingly, Plaintiff has properly pled causation in addition to the other requisite elements of a retaliation claim.

### V. THE COLLECTIVE BARGAINING AGREEMENT DOES NOT MANDATE ARBITRATION OF PLAINTIFF'S CLAIMS

Lastly, Defendant argues that Paragraphs 4 and 43 of Plaintiff's union's collective bargaining agreement ("CBA") mandate arbitration of Plaintiff's claims.   They do not.

---

[10] In *Gorzynski*, the Second Circuit addressed two separate claims of retaliation, one under the ADEA and one under Title VII.   Plaintiff's parenthetical references the Title VII claim.   596 F.3d at 111.

In order for the CBA to nullify Plaintiff's right to bring her claims in court, it must "contain a clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 82 (1998).  Absent either "a provision whereby employees specifically agree to submit all federal causes of action arising out of that employment to arbitration" or "an explicit incorporation of the statutory anti-discrimination requirements," including "identifying the anti-discrimination statutes by name and citation," a collective bargaining agreement does not contain "a clear and unmistakable waiver." *Rogers v. New York Univ.*, 220 F.3d 73, 76 (2d Cir. 2000) *abrogated in part on other grounds 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009); *see also Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016).

Here, the CBA has none of the requisite language.  Rather, it merely covers, in Paragraph 4, "any dispute relating to interpretation or application of the [CBA]," without reference to any statutory claims, discrimination or otherwise.  While Paragraph 43 sets forth an anti-discrimination policy with an arbitration clause "for claimed violation of this policy," incorporation of anti-discrimination statutes is likewise absent.  *See Lawrence*, 841 F.3d at 85 ("[A] contractual dispute is not the same thing as a statutory claim, even if the issues involved are coextensive.").

Indeed, in *Lawrence*, the Second Circuit vacated a decision compelling arbitration where virtually the same language was at issue.  Therein, the collective bargaining agreement contained a "no discrimination" provision and stated that "[a]ny disputes under [that] provision" were subject to arbitration.  *Id.* at 83.  As the collective bargaining agreement at issue in that action referred to disputes under "this provision" and not under federal law, the Circuit concluded that it did not contain a clear and unmistakable waiver of the plaintiff's right to pursue his claims in federal court. *Id.* at 85.  Accordingly, because the CBA, similar to *Lawrence*, only references violations of "this

policy," the CBA does not clearly and unmistakably compel Plaintiff to arbitrate her claims.[11]  *See also Rogers*, 220 F.3d at 76 (denying motion to compel where collective bargaining agreement "contain[ed] both a general arbitration clause and a nondiscrimination provision" but "neither incorporated [any law] explicitly").

## VI.   ALTERNATIVELY, THE COURT SHOULD PERMIT PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT

Alternatively, Plaintiff respectfully requests leave to file a Second Amended Complaint to address Defendant's constitutional affirmative defense and to clarify the circumstances of the end of Plaintiff's employment.

### A.  Proposed Additional Allegations

#### i.   Relating to the End of Plaintiff's Employment

On November 10, 2021, prior to any controversy over an all-Black "Workers Chorus," Plaintiff advised Defendant that she wished to renew her contract with Defendant and continue working on "Hadestown."  (Proposed Sec. Am. Compl. ("PSAC") ¶ 31).[12]  On November 12, 2021, Plaintiff was informed that Defendant was working things out and would get back to her agent about continuing with "Hadestown."  (PSAC ¶ 32).  On November 23, 2021, just before Plaintiff's complaint to Defendant's human resources, Plaintiff was told that Defendant was still discussing the renewal of her contract.  (PSAC ¶ 39).  Thereafter, later in the day on November 23, 2021, Plaintiff made her complaint, discussed above, and she was terminated on December 5, 2021.  (PSAC ¶¶ 40, 51).

---

[11] Moreover, assuming *arguendo* the CBA did apply, the CBA makes clear that arbitration is optional.  *See* Paragraph 4 (disputes "may be submitted to arbitration"); Paragraph 43(F)(2) (disputes "may . . . be submitted directly to arbitration").

[12] A redline version of the PSAC is attached as "Exhibit A" to the Declaration of Joseph Myers.

### ii.  Relating to Defendant's Constitutional Affirmative Defense

As set forth in the Amended Complaint, Plaintiff was cast in the role of "Worker #1" in the "Workers Chorus."  (Am Compl. ¶ 21).  The "Workers Chorus" consisted of five performers in the role of "Workers."  (PSAC ¶ 22).  In addition to these performers, Defendant employed multiple back up performers, who could, and regularly did, "swing in" to cover the role of "Worker."  (PSAC ¶ 22).

On November 20, 2021, Tim Hughes ("Hughes"), a white member of the "Workers Chorus" called out of the matinee and evening performances.  (PSAC ¶ 33).  At that time and throughout the remainder of Plaintiff's employment, Hughes was the only white regular member of the "Workers Chorus."  (PSAC ¶ 33).  As a result of Hughes' absence, one of the Black back up performers covered for him, creating an all-Black "Workers Chorus" against the foreground of white principal performers.  (PSAC ¶ 34).  Later that same day, November 20, 2021, one of the Black members of the "Workers Chorus" informed the stage manager that he felt uncomfortable with the white savior narrative created by white principal performers and an all-Black non-speaking ensemble.  (PSAC ¶ 35).  The following day, November 21, 2021, Hughes was again absent, along with one of the Black members of the "Workers Chorus."  (PSAC ¶ 35).  Although a white performer was available to cover, Defendant elected not to put her on, leaving an all-Black "Workers Chorus" once more.  (PSAC ¶ 36).  Thereafter, following Plaintiff's complaint, Chavkin informed her staff, on or about December 1, 2021, that she had hired a white woman to replace Plaintiff to easily allow the stage manager to avoid an all-Black "Workers Chorus," even though Hughes, a regular member of the "Workers Chorus" was white.  (PSAC ¶ 48).

### B.  Legal Argument

"Leave to file an amended complaint shall be freely given when justice so requires, and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (internal quotations and citations omitted).  "Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion." *Acito v. IMCERA Grp.*, 47 F.3d 47, 55 (2d Cir. 1995).  "The party opposing the amendment has the burden of establishing its futility." *Boston v. Taconic Mgmt.*, No. 12-cv-4077, 2014 U.S. Dist. LEXIS 117517, at *5 (S.D.N.Y. Aug. 22, 2014).

Given the extremely early stage of this action, Defendant cannot plausibly suggest that there is any undue delay, bad faith or undue prejudice.  *See Schulz v. Medtronic, Inc.*, No. 21-cv-414, 2022 U.S. Dist. LEXIS 29393, at *21 n. 5 (D. Conn. Feb. 18, 2022).  The only argument with even remote potential is futility.  However, far from being futile, the proposed amendments further demonstrate the merit of Plaintiff's claims.

Insofar as the facts relating to the end of Plaintiff's employment are concerned, they make clear what was, perhaps, only implicit in the Amended Complaint, that Plaintiff sought renewal of her contract prior to her termination and her internal complaint.  (PSAC ¶ 31).  This, then, decidedly demonstrates that Plaintiff suffered an adverse action through the non-renewal of her contract, for the reasons discussed above.  The additional facts further clarify that no decision relating to Plaintiff's continued employment was made until after her complaint, creating an issue of fact if, for some reason, the Court were to consider the October 8, 2021 email oft-cited by Defendant.  (PSAC ¶¶ 32, 39).

Turning to the proposed amendments relating to Defendant's constitutional defense, these allegations show that the all-Black "Workers Chorus" was not a permanent arrangement, as one

16

of the regular "Workers" was white, but was the product of a temporary staffing issue caused by the brief absence of the white "Worker."  (PSAC ¶¶ 22, 33-36).  Therefore, Plaintiff's termination was not, as Defendant attempts to infer, the product of a creative imagining of the "Workers Chorus."  Rather, Defendant simply found it inconvenient to continue to employ so many Black performers.  (PSAC ¶ 48).  Assuredly staffing convenience is not a constitutionally protected form of speech.  Ultimately, though, these further allegations highlight the concern presented by Plaintiff above, that the basis of Defendant's decision to terminate Plaintiff is not so abundantly obvious as to resolve Defendant's affirmative defense on a motion to dismiss.

## <u>CONCLUSION</u>

Wherefore, for the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Dated: Garden City, New York
　　　 September 5, 2023

　　　　　　　　　　　　　　　　**PHILLIPS & ASSOCIATES,**
　　　　　　　　　　　　　　　　**ATTORNEYS AT LAW, PLLC**

　　　　　　　　　　By:　　　_____/s/_____
　　　　　　　　　　　　　　Joshua Friedman
　　　　　　　　　　　　　　Joseph Myers
　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　585 Stewart Avenue, Suite 410
　　　　　　　　　　　　　　Garden City, New York 11530
　　　　　　　　　　　　　　(212) 248-7431
　　　　　　　　　　　　　　jfriedman@tgplaws.com
　　　　　　　　　　　　　　jmyers@tgplaws.com