UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
KIM MOORE,                                              23-CV-04837 (LAP)

                Plaintiff,

  -against-

HADESTOWN BROADWAY LIMITED
LIABILITY COMPANY,

                Defendant.
------------------------------------------------------------------x


## REPLY MEMORANDM OF LAW IN SUPPORT OF MOTION TO DISMISS


*LAW OFFICE OF VINCENT TOOMEY*
*3000 MARCUS AVENUE*
*SUITE 1W10*
*LAKE SUCCESS, NEW YORK 11042*
*(516) 358-5690*

## **TABLE OF CONTENTS**

                                                                                     Page

ARGUMENT ................................................................................................................. 1

I.   THE COURT SHOULD CONSIDER THE EXTRINSIC EVIDENCE .................. 1

II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT .......... 3

III.  PLAINTIFF HAS NOT ADEQUATELY ALLEGED RACE DISCRIMINATION 5

IV.  PLAINTIFF HAS NOT ADEQUATELY ALLEGED A RETALIATION CLAIM ................................................................................................................................... 7

V.   THE COURT SHOULD DENY PLANTIFF'S REQUEST FOR LEAVE TO AMEND ............................................................................................................... 8

VI.  THIS ACTION IS BARRED BY PLAINTIFF'S CBA ........................................... 9

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**Cases**

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104, 111 (2d Cir.2010) ............................................................................................ 1

*14 Penn Plaza LLC v. Pyett,*
    556 U.S. 247 (2009) .................................................................................................................. 9

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42, 47–48 (2d Cir.1991) ............................................................................................ 2

*Dominguez v. FSI Los Angeles, LLC,*
    2016 WL 2885861 (C.D.Cal. 2016) ........................................................................................ 4

*Lawrence v. Sol G. Atlas Realty Co.,*
    841 F.3d 81 (2d Cir. 2016) ....................................................................................................... 9

*Leibowitz v. Cornell Univ.,*
    584 F.3d 487, 501 (2d Cir. 2009) ............................................................................................ 7

*Lucente v. International Business Machines Corp.,*
    310 F.3d 243, 258 (2d Cir. 2002) ............................................................................................ 8

*Oram v. Soulcycle, LLC,*
    979 F.Supp.2d 498, 503 (S.D.N.Y. 2016) ............................................................................... 2

*Ruffolo v. Oppenheimer & Co.,*
    987 F.2d 129, 131 (2d Cir. 1993) ............................................................................................ 8

Defendant respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiff's Amended Complaint ("AC") pursuant to Fed.R.Civ.P. 12(b)(6). This is not a close case. Plaintiff offers no plausible claim or cognizable argument to escape the reality of the finite terms of her employment, to which she knowingly agreed. The Court should also deny leave to file the proposed second amended complaint which as futile.

## ARGUMENT

### I. THE COURT SHOULD CONSIDER THE EXTRINSIC EVIDENCE

Plaintiff's deliberate attempt to shield documents from this Court that are, by definition, integral to the AC, will result in wasted judicial resources and unnecessarily fuel the cost of litigation. Plaintiff's argument that the Court should not consider any of Defendant's exhibits – not even her employment contracts – is absurd and demonstrates the fundamental weakness of this case. Each of the documents submitted are relied upon in the AC, regardless of whether Plaintiff acknowledges that fact.

A court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.2010) (*internal citation omitted*). "Where a document is not incorporated by reference, the court may [nevertheless] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.*, at 111 (*internal citation omitted*). The Second Circuit has further held that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document]…which is integral to the complaint, the defendant may produce the [it] when attacking the complaint for its failure to state a claim," and the court may take that document into consideration in deciding the motion to dismiss, without converting the proceeding to one for summary judgment. *Cortec*

*Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).[1]

Plaintiff argues the Court should not consider her employment contracts or the October 8, 2021 ("October 8") email because they are not referenced or "allude[d]" to in the AC. This is simply not true. The AC rests almost entirely on allegations that Plaintiff was "fired." *AC* ¶2, 43-46. Plaintiff's employment contracts, which set forth finite and temporary terms of employment are, by definition, integral to the AC. Such documents were considered on a motion to dismiss in *Oram v. Soulcycle, LLC*, 979 F.Supp.2d 498, 503 (S.D.N.Y. 2016): "Consideration of Plaintiff's employment contract and related documents are also appropriate with respect to the motion to dismiss Plaintiff's [claims] as they are integral to the [Amended Complaint]."

Likewise, the October 8 email, initiated by Plaintiff's agent, confirmed the term of the second employment contract and that Plaintiff would not be asked to work beyond December 5, 2021. The AC, however, implausibly alleges that Plaintiff was not aware her employment was ending on December 5, 2021 until November 27, 2021 (*AC* ¶38), even though she signed the second employment agreement and directed her agent to inquire as to whether Defendant would consider hiring her for another term. The October 8 email clearly shows that Plaintiff was aware well before November 27, 2021 that her last day of work would be December 5, 2021.

The same is true for Defendant's Exhibits 4 and 5, which are the emails circulated by David Neumann regarding the casting of the Worker Chorus. Plaintiff argues these emails should be excluded because "mere mention" in the AC does not make them integral. Neumann's emails, however, form the basis of Plaintiff's discrimination and retaliation claims and are discussed at length over numerous paragraphs. *AC* ¶¶29-39. These emails, which are incorporated by

---

[1] To be considered, the authenticity, accuracy or relevance of an "integral" document must not be in dispute. *See DiFolco*, at 111 (*internal citing omitted*). Here, there is no dispute that the exhibits submitted by Defendant are authentic, accurate and relevant.

reference and relied on in the AC, discuss the creative differences relating to casting of the Worker Chorus, and show that Plaintiff's claims are implausible and constitutionally impermissible. Accordingly, it is appropriate and necessary for the Court to consider the emails on a motion to dismiss.

## II. PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT

Plaintiff's employment discrimination claims are barred by the First Amendment. In opposition, Plaintiff argues the Court need not consider this affirmative defense because it is "not so evident on the face of the [AC]." *Pl. Opp., p. 5*. This is yet another disingenuous attempt to persuade the Court to ignore what is clear from the pleadings. Specifically, Plaintiff argues she is not trying to alter the message of *Hadestown* because the "creative vision for [the show] was racial diversity;" and the job posting and show's director expressed a commitment to diversity[2], meaning that if she were offered continued employment, diversity would be achieved. *Pl. Opp., p. 7*. While the show's creator, Anaïs Mitchell, is primarily responsible for the show's vision rather than Plaintiff, assuming these facts are true, *i.e.*, that racial diversity was part of the creative vision, then casting decisions to ensure diversity are protected speech. Indeed, Neumann's emails reveal the discussions within the company about whether an "all black" Worker Chorus actually misrepresented the creative vision of the play. The emails also show that Neumann and others were engaged in the creative process related to casting and storytelling. Despite heavily relying on these emails and referencing them throughout the AC, Plaintiff urges the Court not to consider them because doing so exposes the implausibility of her claim that casting was based on her alleged internal complaint. The AC and emails show that there was an

---

[2] Plaintiff suggests that racial diversity equals an all-black Worker Chorus, which at least in terms of casting, is misleading. Diverse casting includes people of various races, ethnicities, genders, ages, body types, and backgrounds.

3

open dialogue surrounding the casting of Worker Chorus and that Plaintiff was encouraged to participate in those discussions regarding casting and storytelling. The emails also show that these discussions occurred well after Plaintiff was notified that she would not be asked to work beyond December 5, 2021.

The facts in this case are vastly different than those in *Dominguez v. FSI Los Angeles, LLC*, 2016 WL 2885861 (C.D.Cal. 2016), which Plaintiff strains to analogize. There, Dominguez was a television reporter alleging employment discrimination. The employer argued on a motion to dismiss that its story ideas and the reporters assigned to cover those stories were protected First Amendment speech. The motion was denied because the plaintiff did "not allege that she seeks to espouse a particular message using her employment with Defendant as a vehicle, seeks to alter Defendant's chosen message, or seeks to otherwise dictate the content of Defendant's programming." *Id., *2.*

By contrast here, Plaintiff admittedly seeks to alter the message, arguing that "all black" Worker Chorus should be cast regardless of the concerns over a mistaken "white savior" narrative because doing so, in her opinion, would be consistent with Defendant's racial diversity goals. Plaintiff explicitly alleges that despite Defendant's expressed commitment to diversity, it sought to "avoid an 'all black' cast for the Workers Chorus.'" *AC*, ¶¶22-42. The AC also explicitly alleges that Plaintiff's complaint was in response to Neumann's November 23, 2021 email, which discussed the "'white savior story', meaning, an exclusively black and African American group of actors for the Workers Chorus." *AC ¶31*. Neumann's emails show that, unlike *Dominguez,* what was being discussed and considered was the creative vision of the show.

Even if the facts in the allegations in this case were not in stark contrast with those in *Dominguez*, it would still be of no moment because Plaintiff knew all along that she was not

4

being "fired" for any complaints she made about Neumann's emails. Try as she might, Plaintiff cannot escape the fact that Neumann's emails were not sent until late November of 2021, approximately six weeks after she confirmed that her employment would end in accordance with the terms of her employment contract. Any complaint she may have made following Neumann's emails had absolutely nothing to do with the fact that her employment ended on December 5, 2021. Plaintiff personally signed her employment agreement on July 19, 2021 and agreed to that end date. *Harrison Decl., Ex. 2.* This fact was confirmed on October 8, 2021, when her agent specifically inquired as to whether she might be asked to stay beyond that date. *Id., Ex. 3.* Plaintiff's allegation that she was "terminated" because she complained about discrimination in November are, therefore, neither plausible nor tenable.

### III.   PLAINTIFF HAS NOT ADEQUATELY ALLEGED RACE DISCRIMINATION

Plaintiff's race discrimination claim is premised on the hope that this Court will ignore documents that are integral to the AC and incorporated by reference. As previously discussed, Plaintiff agreed to work for a finite period of time – through December 5, 2021 – and emails to her agent confirm on October 8, 2021 that she would not be asked to stay beyond that time. Plaintiff was not fired; and the term of her employment was not determined or impacted by her alleged complaint in November of 2021. Accordingly, there was no adverse action and no causation.[3]

Plaintiff attempts to bolster her claim by alleging that Timothy Reid "indicated" to her that management was seeking to replace her with a "white woman" and that Rachel Chavkin

---

[3] Plaintiff attempts to argue that Defendant has conceded that Plaintiff suffered an adverse action with respect to her race discrimination claim. *Pl. Opp, fn 7.* That is incorrect. Defendant has repeatedly argued there was no adverse action. Moreover, since the AC does not separate Plaintiff's discrimination and retaliation claims, Defendant did not have an extra burden to separate out its discussion over two separate sections. *AC, p. 5(B).*

"indicated to her staff that she hired a white woman to replace Moore because she sought to avoid an all-black Workers Chorus." *AC, ¶¶36, 40, Pl. Opp., pp. 8-9.* The AC does not offer any facts or details to support these threadbare allegations, including with regard to whom Chavkin supposedly spoke to on December 1, 2021 and how it was communicated to Moore. As director, it is not plausible that Chavkin would have even made this statement, knowing that Plaintiff's contract ended on December 5, 2021 and knowing that Plaintiff had been told on October 8, 2021 that she would not work past that date. It is likewise implausible that Reid "indicated" to Plaintiff on November 24, 2021 that Defendant "was seeking to replace [her] with a 'white woman.'" *AC ¶36.*

First, even assuming that Reid made such a comment, Plaintiff already knew at that time she was not going to work beyond December 5, 2021. Yet, Plaintiff expects this Court to believe that but for her complaint, she would have otherwise carried on working past that date. All Broadway performers, including every member of *Hadestown*, work in accordance with the terms of their duly negotiated employment contracts and the industry contract with the union, Actors Equity. Plaintiff herself signed two different contracts covering two different terms. She did not have a contract covering a term past December 5, 2021. *Harrison Decl. Ex. 1, 2.*

Second, Reid's comment on its face is insufficient, particularly when viewed in the proper context, *i.e.,* Plaintiff's last performance was scheduled for December 5, 2021; and so, opining that a white performer may be brought in to the role to ensure diversity within the Worker Chorus, would have been understandable given the concerns expressed over the unintended "white savior" narrative that was discussed in Neumann's emails. There is no dispute that there were discussions during this time around the message and stories conveyed through the show's casting. Those discussions are protected First Amendment speech. Moreover, while Reid was the

6

dance captain, the purpose of that role is the maintenance of artistic quality. *Harrison, Decl .Ex. 6A, Sec. 19.* Like Plaintiff, he was a member of the Union and, as such, had no decision-making authority over hiring or firing personnel. *See Harrison Decl, Ex. 6A, p. 29-30.* Therefore, is it not plausible that he would have "informed her that Defendant was seeking to replace her with a 'white woman.'" *Pl. Opp., p. 8.*

Based on the foregoing, the AC has failed to plead a claim of race discrimination.

### IV.  PLAINTIFF HAS NOT ADEQUATELY ALLEGED A RETALIATION CLAIM

In support of her retaliation claim, Plaintiff again urges this Court not to consider extrinsic evidence. Plaintiff asks the Court to consider her retaliation claim in an utter information void, where her employment contract does not exist and the October 8 email never happened. Plaintiff's efforts, however, only highlight why they are integral to the AC.

While Plaintiff correctly notes that non-renewal of a contract can constitute an adverse action, the AC does not allege that she sought to renew or extend the term of her contract. *Pl. Opp., p. 11-12, citing Leibowitz v. Cornell Univ.,* 584 F.3d 487, 501 (2d Cir. 2009). Instead, while ignoring the term of her contract and the October 8 email, the AC alleges Plaintiff was "terminated" because she complained about racial discrimination. *AC, ¶44.* Even if her agent's October 8 email inquiry constituted an effort to renew, Beverly Edwards clearly communicated that was not an option. The October 8 email also shows that assuming Plaintiff engaged in protected activity in November, there is no causal link between her complaint and the Defendant's decision not to have her work beyond her contract term. Plaintiff knew no later than October 8 that her last day would be December 5, 2021. She did not contract for an extension or additional term of employment. The attempt to somehow link her alleged complaint to the end of her employment is implausible and not supported by the AC or the extrinsic evidence.

Based on all of the above, Plaintiff has failed to adequately plead a retaliation claim.

## V. THE COURT SHOULD DENY PLANTIFF'S REQUEST FOR LEAVE TO AMEND

Fed.R.Civ.P. 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading should be freely given "when justice so requires." However, "[w]here it appears that granting leave to amend is unlikely to be productive…it is not an abuse of discretion to deny leave to amend." *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (*per curiam*). Denial is appropriate if the proposed amendment is futile. *Id.* A proposed amendment is futile "if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6)." *Lucente*, at 258.

The proposed Second Amended Complaint ("SAC") does nothing to cure the fundamental defects in her claims, which are (1) the casting decision at issue is protected First Amendment speech; and (2) her race and retaliation claims are implausible because she was hired to work for a temporary period of time and the decision not to extend employment was made before any alleged complaint. While still not acknowledging the existence of the October 8 email, the SAC tries to undermine its existence with a proposed allegation that her agent indicated to Defendant on November 10, 2021 that Plaintiff "wished" to continue working at the show. Plaintiff, however, does not allege any details or specifics to support this allegation, such as with whom she shared her "wish." Plaintiff then vaguely alleges that she was informed by an unidentified person that "Defendant was working things out." *SAC ¶¶ 31-32*. Similarly, Plaintiff claims that on November 23, 2021, she was "informed that Defendant was still discussing the renewal of her contract." *Id., ¶39.* This is insufficient, especially because we know through the October 8 email that Beverly Edwards was responsible for responding to such requests and had advised her agent

8

that the contract would not be extended. If a renewal or extension were underway, her agent would have gone directly to Edwards as he did on October 8, 2021.

Plaintiff also proposes several new allegations regarding the absence of a white member of the Worker Chorus on November 20 and 21, 2021 and an internal complaint that followed from Defendant's decision to use a "Black back up performer" in his place. *SAC ¶33-36.* These proposed additions highlight how a casting decision impacted the narrative of the story: "Later that same day, November 20, 2021, one of the Black members of the "workers Chorus' informed the stage manager that he felt uncomfortable with the white savior narrative created by the white principal performers with an all-Black non-speaking ensemble." *SAC¶35.* The new allegations also show Defendant's real-time casting challenges and efforts while serving the creative vision of the story, which, as previously discussed, are core protected speech. *SAC ¶33-36.*

Accordingly, Plaintiff should not be granted leave to amend because the proposed amendments would be futile. As with the AC, Plaintiff's claims against the Defendants in the SAC would be dismissed for failure to state a claim upon which relief can be granted.

## VI. THIS ACTION IS BARRED BY PLAINTIFF'S CBA

Contrary to the Plaintiff's claims, the collective bargaining agreement ("CBA") clearly and unmistakably requires arbitration of the claims in the AC, as required by the Supreme Court (*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), and as interpreted by the Second Circuit in *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81 (2d Cir. 2016). The *Lawrence* Court found a non-discrimination clause did not clearly and unmistakably waive the employee's right to pursue claims of discrimination and retaliation in federal court because it did "no more than define the characteristics on which discrimination is contractually forbidden under the CBA." *Id.*, at 85. The Court added: "[s]ignificantly, the arbitration procedure outlined in Article V of the CBA

covers '[a]ny dispute or grievance between the Employer and the Union'", and that "[a] statutory discrimination claim would be between the employer and the employee." *Id.*, at 85, fn.2.

Here, the CBA is far broader than that considered in *Lawrence*, and goes beyond merely requiring arbitration of contractual disputes only. While not listing every applicable statute,[4] the CBA defines contractual rights and the employer's broad policies of non-discrimination and non-retaliation, which encompass the statutory provisions upon which the Plaintiff relies in this action. In addition to extensive anti-discrimination and anti-retaliation provisions in Section 43, the CBA also contains extensive descriptions of its non-discrimination policies in casting, which are matters are expressly committed to the CBA's grievance and arbitration procedure. *Harrison Decl, Ex. 6A,* Sec. 23. Moreover, the Arbitration and Grievance procedure defines a dispute as "any dispute between a Producer and/or the League and/or the Actor and/or Equity." *Id,* Sec. 4. The process explicitly applies to disputes between the employer and the Actor. Therefore, in addition to the other reasons set forth herein, Defendant further respectfully submits that Plaintiff's claims are barred by the CBA.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion to dismiss the Amended Complaint, that the Court deny Plaintiff's request to submit a second amended complaint, that judgment be entered for Defendant, and that Defendant be granted costs, fees, and disbursements together with such other and further relief as this Court deems just and proper.

---

[4] The CBA does expressly reference the obligations imposed by New York City and New York State Law regarding sexual harassment training and policies, which laws have requirements not found in federal law prohibiting discrimination and harassment. *Harrison Decl., Ex. 6A* Sec. 43(D).

Dated: Lake Success, New York
September 12, 2023

                                              Respectfully submitted,
                                              LAW OFFICE OF VINCENT TOOMEY

                                              */s/ Heather P. Harrison*
                                              Vincent Toomey
                                              Heather P. Harrison
                                              *Attorneys for Defendant*
                                              3000 Marcus Avenue, Suite 1W10
                                              Lake Success, New York 11042
                                              (516) 358-5690
                                              vtoomey@vtlawoffice.com
                                              hharrison@vtlawoffice.com